HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ELYSE KANE, a single person, and ELYSE
KANE, d/b/a KANE CONSTRUCTION
AND CONSULTING, a sole proprietorship,

                              Plaintiff,

        v.

CITY OF BAINBRIDGE ISLAND,

                              Defendant.

No. 3:10-cv-05731-RBL

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
[Dkt. #30]

**INTRODUCTION**

    THIS MATTER comes before the Court upon Defendant City of Bainbridge Island's
Motion for Summary Judgment.  [Dkt. #30].

    This is a case about a land use dispute involving Plaintiff's waterfront property on
Bainbridge Island.  When Plaintiff bought it, the property could not be developed because it lay
completely within a wetland buffer.  The City offered a use exception to allow some building on
the property.  Even when Plaintiff exceeded the limits of the exception by developing the property
in an impermissible manner, the City retroactively approved many of the developments anyway.

    Plaintiff was unsatisfied because the City did not allow all of her uses and other proposed
developments.  She appealed the City's decision, claiming it violated her property rights.  A
Hearing Examiner affirmed the City's decision.  After a circuitous appeal and remand process,

ORDER - 1

Plaintiff filed this suit against the City for damages, making a wide variety of claims.  The City filed this Motion for Summary Judgment, seeking dismissal of all claims.

The Court has reviewed the materials submitted in support of and in opposition to the Motion.  For the reasons below, the Court GRANTS Defendant's Motion for Summary Judgment.

**BACKGROUND**

Plaintiff Elyse Kane is a property developer, former Seattle environmental compliance officer, and the former owner of the Bainbridge Island property at issue in this case (the "Property").  Defendant City of Bainbridge Island is a municipal corporation organized under the laws of the State of Washington.

**1.  State and Municipal Law at Issue**

The City's municipal code establishes a process to evaluate and adjudicate applications for land use and property development.  The Critical Areas Ordinance (CAO) includes requirements for the use and development of parcels within or adjacent to land designated as "critical areas" or "critical area buffers" according to the state's Growth Management Act (GMA) (Wash. Rev. Code § 36.70A).  Wetlands of a certain size and value are considered critical areas under the act.  The GMA applies to Kane's Property because it is located entirely within a designated wetland buffer.  Because the Property is waterfront, the state Shoreline Management Act (SMA) (Wash. Rev. Code § 90.58) also applies via the City's Shoreline Master Plan (SMP).  In regulating Kane's property use, the City applied the more stringent regulations of the CAO rather than the SMP.

**2.  Development of the Kane Property**

In 2000, Plaintiff purchased four waterfront parcels on Bainbridge Island.  In 2004, she sold one parcel to a private purchaser and offered the other three to the City for environmental conservation through its Open Space acquisitions program.  After arms-length negotiations, the City purchased two parcels.  Kane argues the land she sold to the City was encumbered by an implied non-exclusive access easement for the benefit of the parcel she retained.  The City contends Kane did not retain any rights or easements on the two parcels sold to the City.  Kane kept the remaining parcel, which is approximately 13,200 square feet in size.  That parcel and her development of it is the subject of this action.  The Property was entirely subsumed by a wetland

buffer, set aside from development under the state GMA and the City's CAO.  Consequently, Kane filed an application with the City for a Reasonable Use Exception (RUE) to allow residential development on the Property.

Over neighborhood opposition, the RUE was granted on June 12, 2004.  Several conditions were imposed by the City, including limiting the house's footprint to 1,085 square feet, 225 square feet for the footprint of an open carport, and a driveway in conformance with the proposed site plan.  The City's administrative decision allowed for 10,900 square feet to be deemed "impact area," or an area in which development of the Property could occur.  To offset development in the impact area, the decision required that a corresponding 10,900 square feet of wetland buffer both on- and off-property be set aside as an undisturbed "enhancement area."  The on-property portion of the enhancement area was determined to be 1,930 square feet.  The City also required Kane to obtain an approved building permit "in substantial conformance with the [site] plans" before commencing any construction on the Property.  [Decl. of Larry Frazier, Dkt. #31 at 8].  Kane did not challenge or appeal the conditions imposed by the administrative decision accompanying the RUE.

After the City issued the RUE, Kane built a home and developed her Property.  Among other things, she constructed a driveway that diverged from the site plan and involved travel over the neighboring property.  Using concrete pavers, Kane constructed a patio that was not on the site plan.  She utilized a parking area inconsistent with the site plan.  Kane also installed a shed and propane tank and parked a recreational vehicle on the Property.  None of these improvements were explicitly permitted in the approved RUE and site plan.

### 3.  Disputes and Amendments to the RUE

Kane's development and use of her Property led her neighbors to complain to the City, registering their concern about unlawful development.  Rather than pursue code enforcement, the City allowed Kane to file an application to amend her existing RUE.  The purpose was to obtain *post hoc* City approval for the disputed developments.

Kane now contends she filed the application to amend under duress.  She alleges that City officials threatened code enforcement actions against her for uses of her Property she believes

were legal.  She notes that the RUE's original application form required identification of only the "structures" and "impervious surfaces" planned for construction.  [Decl. of Elyse Kane, Ex. 16, Dkt. #44 at 36].  Kane argues that the RUE did not restrict the patio, parking area, shed, propane tank, or RV, because they were not were not "structures" or impervious surfaces.  She also argues that an easement existed to allow access via a pre-existing driveway.  Nevertheless, Kane filed an application to amend the RUE in October 2006, without challenge or objection.

Among other things, Kane's proposed modified site plan included changes to the existing approved driveway, inclusion of the cement-paver patio, and retention of the RV parking area and storage shed.  The City's response memorandum approved most of the proposed amendments, including the patio.  However, the City did not approve permanent RV parking or the shed.  After receiving City approval for driveway modifications, Kane asserted that the approved driveway plan was insufficient.  She appealed the City's decision to the Bainbridge Island Hearing Examiner on March 15, 2007.  She contested several administrative decisions.  She challenged the City's refusal to allow RV storage and shed.  She challenged her obligation to move the propane tank as close to the residence as possible and contested the requirement that she remove the gravel parking area behind the home and to replace it with native vegetation.

On April 27, 2007, the Hearing Examiner stayed the appeal so Kane could file a second application to amend the RUE.  On February 27, 2008, she filed a second amendment, requesting relocation of the existing access and driveway to cross the adjacent parcel.  Kane expressed concerns about driveway safety and a desire to comply with city code.  She proposed transitioning the carport to storage use and building a replacement two-car garage on the landward side of the existing structure in order to accommodate parking off the new access area.  On July 25, 2008, the City rejected these proposals.  In its denial, the City said that the proposed amendment took for granted property rights Kane had sold away (namely, an access easement across the adjacent lot). It also noted that the house's footprint would exceed the maximum lot coverage permitted in the Code and that the proposals exceeded what was necessary under the RUE ordinance.  Kane timely appealed the second decision as well.

**4. Procedural Background**

    **a.   Appeal to the Bainbridge Island Hearing Examiner**

In a consolidated appeal of the two denied amendment proposals, Kane and the City were represented by counsel during a three-day administrative hearing.  Both parties called lay and expert witnesses and developed a substantial record.

On December 2, 2008, the Hearing Examiner issued an order affirming the City's decision and denying Kane relief.   [Decision of the Hearing Examiner, Dkt. #39 at 15].  The Examiner concluded that Kane was barred by *res judicata* from contesting the denied amendments because she had not appealed the original approved RUE in 2004.  [Dkt. #39 at 25].  The Examiner noted that *res judicata* would not apply if Kane could show a "substantial change" in the application conditions.  However, the Examiner found no substantial change that would affect Kane's appeal, particularly rejecting Kane's argument that the existing driveway was unsafe.  [Dkt. #39 at 25–26].

    **b.   Appeal to Kitsap County Superior Court**

On December 23, 2008, Kane petitioned the Kitsap County Superior Court for review under the state Land Use Petition Act (LUPA) (Wash. Rev. Code § 63.70C).  She argued that the City misapplied the CAO to her property.  The City responded that Kane's LUPA petition is procedurally barred because she failed to appeal the initial RUE in 2004.  The court determined that Kane's petition could not be resolved by "the technical nuances of the CAO, [or] by the City's insistence that the RUE amendment process . . . is wholly insulated from judicial review."  [Revised Memorandum Opinion, Dkt. #1 at 50].  The court determined that the dispute must be resolved according to the provisions of the SMA rather than the GMA.  [Dkt. #1 at 50].

Two state court opinions clarified which statute governed land use regulations of a property, such as Kane's, that fell under both the GMA and SMA.  After the City denied Kane's second amendment application but before the Hearing Examiner had ruled on Kane's appeal, the Washington Supreme Court decided *Futurewise v. W. Wash. Growth Mgmt. Hearing Bd.*, 164 Wash.2d 242 (2008).  Then, while Kane's petition was pending before the Superior Court, the Washington Court of Appeals handed down *Kitsap Alliance of Prop. Owners v. Cent. Puget Sound Growth Mgmt. Hearing Bd.*, 154 Wash. App. 190 (2009) (*KAPO*).

In *Futurewise*, the Court's narrow plurality opinion held that waterfront property was governed only by the SMA.  It cited the legislature's finding that "critical areas within the jurisdiction of the [SMA] shall be governed by the SMA."  *Id*. at 245.  In *KAPO*, the appellate court restated the narrowest plurality holding in *Futurewise*.  It held that real property regulated under the SMA is regulated *only* by the SMA.  *KAPO*, 154 Wash. App. at 198.

The Superior Court requested supplemental briefing to decide what impact *KAPO* had on the Kane matter.  The City again argued that reaching the merits of Kane's LUPA petition would be impermissible because Kane did not appeal the original RUE.  The City further argued that the SMP incorporates the CAO by reference, rendering *KAPO* moot.  Kane agreed with the City on this point, arguing that the CAO and SMP cross-references suggest that "the protection of wetlands is the same under either law."  [Dkt. #1 at 52].

The court disagreed.  It determined that, were a conflict to arise like it did here, the City's CAO would effectively trump the SMP.  The court viewed the CAO as contradicting *KAPO*: ". . . *KAPO* seems to dictate that it would be an erroneous application of law for the City's CAO to impose greater restrictions on Ms. Kane than those required by the SMP."  [Dkt. #1 at 52].

The Superior Court found *KAPO* controlling.  The court found that the Hearing Examiner erred in applying the GMA rather than the SMA after the Supreme Court rendered its *Futurewise* plurality opinion.  It also found that the Examiner's application of the GMA constituted a failure to follow a prescribed legal process.  The Superior Court vacated the Hearing Examiner's prior order and remanded the case, giving the City an opportunity to apply the SMA.  The court specifically did not revisit or reverse any of the Hearing Examiner's findings and conclusions.  [Dkt. #1 at 56].

### c.  Action for Damages

Plaintiff then filed this action for money damages in Kitsap County Superior Court, disregarding the court's remand order.  The City removed the matter to Federal Court pursuant to 28 U.S.C. §§ 1441 and 1446.  Plaintiff asserts the following claims: federal claims under 42 U.S.C. § 1983 for violation of her Fourteenth Amendment rights; state claims under Wash. Rev. Code § 64.40 for acts of an agency that are arbitrary, capricious, unlawful, or exceed lawful authority; common law tortious interference with business expectations; negligence, including negligent

supervision of employees and negligent infliction of emotional distress; promissory estoppel; and a partial taking.

The Defendant moves for summary judgment against Plaintiff on all claims and seeks attorneys' fees, as the prevailing party, under Wash. Rev. Code § 64.40.020(2).

## DISCUSSION

### 1. Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a decision in its favor.  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1220 (9th Cir. 1995).  It is not the role of this Court "to scour the record in search of a genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.,* 55 F.3d 247, 251 (7th Cir. 1995)).

### 2. Federal Law § 1983 Claims

#### a. Substantive Due Process Claim

Plaintiff asserts a § 1983 claim, arguing that the City's property use restrictions violated her substantive due process rights under the Fourteenth Amendment.  She contends that a protectable property interest was created by the issuance of the RUE and that any subsequent restrictions (viewed by the City as code enforcement) violated that interest.  The City argues that its actions do not constitute "most egregious" official conduct required under the law.

To establish a substantive due process claim against the government for land use restrictions, a plaintiff must show "egregious or arbitrary government conduct," *Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 198 (2003), that is "clearly arbitrary and unreasonable."  *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926).  Only "the most

egregious official conduct" can be considered arbitrary in the "constitutional sense." *County of Sacramento v. Lewis*, 532 U.S. 833, 845–46 (1998). To support a claim, government action must "lack any rational relationship to the public health, safety, or general welfare." *Crown Point v. Sun Valley*, 506 F.3d 851, 855–56 (9th Cir. 2007).

Plaintiff has failed to present any evidence that the City's conduct meets this standard, even viewed in the light most favorable to her. Where the City discovered non-conforming property developments, Plaintiff had the opportunity to amend the RUE to account for them rather than be subject to code enforcement. Such government conduct is manifestly reasonable and does not constitute the egregious official conduct necessary to sustain Plaintiff's claim. Defendant's Motion for Summary Judgment on Plaintiff's substantive due process claim is GRANTED.

### b. Procedural Due Process Claim

Plaintiff asserts a § 1983 claim for violation of her Fourteenth Amendment procedural due process rights. Plaintiff argues that the City revoked property rights it previously gave her without offering her the chance to appeal under the municipal code. She argues that RUE enforcement during her appeal constituted a violation of her due process rights. The City argues that Kane has no right to a permit. It argues that Kane simply couches in due process language a desire to do whatever she wants with her restricted parcel. Defendant argues this is not a constitutional issue.

To demonstrate a violation of her procedural due process rights, Plaintiff must show the existence of an interest protected by the Constitution's due process clause and an inadequacy of available procedures to challenge the government's actions. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). Plaintiff has offered no evidence that the property rights she claims actually belonged to her. She fails to present evidence that the appellate procedures she pursued were inadequate. The issue in her dispute was not about a deprivation of her property rights but whether or not her development was in conformity with the RUE. The City was within its rights to regulate her property use, and Kane was within hers to appeal. No procedural due process violation exists. Defendant's Motion for Summary Judgment on Plaintiff's procedural due process claim is GRANTED.

### c.   Equal Protection Claim

Plaintiff asserts a § 1983 claim for violation of her Fourteenth Amendment equal protection rights.  Kane argues she was treated differently than other similarly situated parties who had been granted residential use of their property that abutting the adjacent wetlands.  Kane also argues that neighboring vehicles were permitted to park on city property without threat of prosecution.  She notes that responses to her questions regarding the parking situation yielded the cryptic response that "'arrangements' had been made" with her neighbors.  [Dkt. #42 at 25].  The City argues that there is no evidence regarding who the other individuals similarly situated are, what their situations entailed, and how their cases differed from Kane.  Without such evidence, the City argues Kane cannot support an equal protection claim.

If Plaintiff cannot show intentional discrimination, the claim fails.  *N. Pacifica, LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).  Additionally, if Plaintiff cannot show she has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), her claim similarly fails.

In this case, Plaintiff has provided no evidence of intentional discrimination and has failed to present evidence of others similarly situated whose treatment differed.  The City rightly points out, echoing Justice Breyer (*Olech*, 528 U.S. at 565 (Breyer, J., concurring)), that Kane's situation is unique to her Property, her RUE, and her plan for developing that Property.  Finding others who meet the "similarly situated" requirement is not easy, and Plaintiff has failed to offer such evidence.  Defendant's Motion for Summary Judgment on Plaintiff's equal protection claim is GRANTED.

### 3.   State Law § 64.40 Claim

Plaintiff seeks recovery under Wash. Rev. Code § 64.40 for arbitrary, capricious, or unlawful regulatory actions by the City.  Kane claims the City's administrative decisions were unlawful and exceeded the City's authority, thereby depriving her of property rights to which she was lawfully entitled.  The City argues, on the other hand, that the regulatory actions challenged by

Plaintiff do not constitute "acts" under the meaning of the statute and therefore are not subject to liability.

Section 64.40 allows plaintiffs to sue the government for actions "which are arbitrary, capricious, unlawful, or exceed lawful authority" provided that such actions are unlawful or exceed lawful authority. Wash. Rev. Code § 64.40.020(1). Relief is only available if "the final decision of the agency was made with knowledge of its unlawfulness or that it was in excess of lawful authority, or it should reasonably have been known to have been unlawful or in excess of lawful authority." *Id.* An agency "act" is "a final decision by an agency which places requirements, limitations, or conditions upon the use of real property in excess of those allowed by applicable regulations." Wash. Rev. Code § 64.40.010(6).

Plaintiff asserts that her damages action under § 64.40 contains inherent issues of fact which must be resolved to determine whether the government's actions meet the statutory requirements for arbitrariness, capriciousness, or unlawfulness. She raises examples of unresolved issues such as the City's threat of pursuing civil code enforcement against what Kane characterizes as legal uses of her property. Kane cites as issues of fact the requirement that she submit an RUE amendment application and also cites denial of those applications. However, Defendant is correct that these are not "acts" under the statute because they are not final determinations, nor were they appealed. Though Plaintiff may cite situations in which she felt the City did not follow proper procedures, she did not appeal or challenge them at the time. The questions she raises as issues of fact cannot be catalogued as "acts" under the statute.

The City correctly identifies the Hearing Examiner's final decision as the only "act" in this case subject to § 64.40 liability. As designed, the statute grants relief only where an "act" is appealed to conclusion. *Brower v. Pierce County*, 96 Wash. App. 559, 564 (1999). Viewing the facts in the light most favorable to Plaintiff, there is simply nothing to show that the Hearing Examiner acted arbitrarily, capriciously, or with knowing illegality. Furthermore, there is no fact presented to show that the Hearing Examiner's decision itself was unlawful or exceeded lawful authority. The Superior Court found that the Hearing Examiner erred in applying the GMA rather than SMA. However, Defendant is correct that her error was ultimately a lack of awareness of the

1  Supreme Court's non-binding plurality opinion in *Futurewise*.  Notwithstanding that oversight, the

2  Superior Court did not revisit or reverse any of the Examiner's findings of fact or conclusions of

3  law.  The Examiner's error does not satisfy the statute's requirements of arbitrariness,

4  capriciousness, or unlawfulness.[1]  Defendant's Motion for Summary Judgment on Plaintiff's §

5  64.40 claim is GRANTED.

6      **4.  Tortious Interference with Business Expectations Claim**

7         Plaintiff claims damages against the City for tortious interference with business

8  expectations.  Kane cites as her valid business expectancy the construction and sale of a single

9  family residence on the Property.  Plaintiff argues that delay and legal expenses resulting from the

10  City's restriction of her property rights adversely impacted her ability to market and sell the

11  Property once developed.  She claims the City's actions made her unable to meet financing

12  obligations, forcing a sale of the Property at a loss.  The City argues that Plaintiff cannot establish

13  a tortious interference claim, because the City exercised its legal interest in good faith.  The City

14  claims its interference was justifiable.

15         To establish a claim of tortious interference, a Plaintiff must show that a valid contract or

16  business expectancy exists, that Defendant had knowledge of it, that Defendant intentionally

17  interfered causing termination of the expectancy by an improper purpose or means, and must show

18  damages.  *Commodore v. Univ. Mech. Contractors, Inc.*, 120 Wash.2d 120, 136 (1992).  "A valid

19  business expectancy includes any prospective contractual or business relationship that would be of

20  pecuniary value."  *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*, 114 Wash.

21  App. 151, 158 (2002).  "Exercising in good faith one's legal interests is not improper interference."

22  *Leingang v. Pierce Cnty. Med. Bureau*, 131 Wash.2d 133, 157 (1997).  A privilege to interfere

23  may be established "if the interferor's conduct is deemed justifiable."  *Cherberg v. Peoples Nat'l*

24  *Bank of Wash.*, 88 Wash.2d 595, 604–05 (1977).  To determine whether conduct is justifiable, a

25  court will consider the nature of the interferor's conduct, the character of the expectancy, the

26

27

28

---

[1] It is worth comment that Plaintiff disregarded the Superior Court's remand when it filed this action for damages.  The Hearing Examiner has not had the opportunity to revise her decision in accordance with the Superior Court's findings.  This Court will not reward Plaintiff's haste, since her grievances may well have been resolved on remand.

relationship between the parties, the interest advanced by the interferor, and the social desirability of protecting the expectancy or the interferor's freedom of action. *Id.*

The City has the authority to regulate property development within the bounds of the law. Its duties exist not only in relation to Kane's property ownership. The City has a duty to the interests of her neighbors in seeing that the City's environmental regulations are upheld. In terms of the City's conduct, it offered to forgo code enforcement in response to developments that arguably violated the RUE. It allowed Kane to file amendment proposals, most of which the City approved. The nature of the expectancy is unclear. Viewing the facts in a light most favorable to the Plaintiff, she did not make clear to the City whether her intention was to sell the home or maintain it as a personal residence. Even so, the City's relationship with Kane is balanced by its relationship with her neighbors and other residents of Bainbridge Island. The City had a duty to all, which it pursued via enforcement of land use regulations. The interest advanced by the City was to respond to citizen complaints about Kane's property development and reasonably enforce its interpretation of the municipal code. It is manifestly certain that Kane's interest in developing her Property cannot outweigh the City's interest in ensuring enforcement of its land use laws. The City's interference was justifiable.

Defendant had a right to interfere for the purposes of protecting a wetland area and enforcing its own laws. Its interference did not constitute tortious behavior. The City's Motion for Summary Judgment on Plaintiff's tortious interference claim is GRANTED.

**5. Negligence Claim**

Plaintiff asserts a negligence claim against the City, arguing that it negligently implemented its land use regulations. Kane argues the City erroneously advised her regarding its authority to regulate her land use rights. She contends that the City had a special relationship with her, owing a duty to provide guidance regarding the application of city code. She claims the City failed that duty repeatedly. Defendant argues that the City is not liable for negligent permitting and that no special relationship exists. Furthermore, the City argues that Plaintiff has failed to identify any standard of care owed to applicants in a permitting process.

A duty of care may arise where a public official with a responsibility to provide accurate information fails to correctly answer a plaintiff's question when the plaintiff intended to benefit in some way from the information. *Taylor v. Stevens County*, 111 Wash.2d 159, 171 (1988); *see also Rogers v. City of Toppenish*, 23 Wash. App. 554 (1979) (holding that a special relationship existed where a zoning administrator erroneously informed a property owner that his property was zoned for apartments). The special relationship exception requires direct contact between the public official and injured plaintiff, that an express assurance was given by the public official, and that the plaintiff justifiably relied. *Babcock v. Mason Cnty. Fire Dist. No. 6*, 144 Wash.2d 774, 786 (2001). However, a government duty cannot arise from implied assurances. *Id.* at 789; *see also Vergeson v. Kitsap County*, 145 Wash. App. 526, 538 (2008) (a government duty arises where a direct inquiry made by an individual is met with incorrect information clearly set forth by the government).

Plaintiff fails to identify specific instances of express assurances relied upon in dealing with the City and its land use code. Even with respect to the RUE amendment process, Kane has not offered evidence of an express assurance given by the City creating a special relationship. On that ground, general negligence claims fail. Additionally, Defendant is correct that Plaintiff has not identified a breach of any particular standard of care. That provides further grounds for dismissal of general negligence claims. *See, e.g.*, *Gurno v. Town of La Connor*, 65 Wash. App. 218, 228 (1992) (affirming directed verdict after plaintiff failed to present evidence of an applicable standard of care and its breach). Defendant's Motion for Summary Judgment on Plaintiff's negligence claim is GRANTED.

**6. Negligent Supervision Claim**

It is unclear whether Plaintiff asserts a negligent supervision claim against the City. Plaintiff's Response to Defendant's Motion for Summary Judgment [Dkt. #42] does not address Defendant's arguments supporting summary dismissal of this claim. To the extent that Plaintiff intends to assert negligent supervision, that claim fails.

An employer is vicariously liable for acts of its employees that are within the scope of employment. *See Rahmann v. State*, 170 Wash.2d 810, 815 (2011). A cause of action for

negligent supervision only arises when an employee acts outside the scope of employment. *Briggs v. Nova Servs.*, 135 Wash. App. 955, 966 (2006).

Plaintiff offers no evidence that any agent of the City was acting outside the scope of employment during their interaction. Without such evidence, a negligent supervision claim fails. Defendant's Motion for Summary Judgment on Plaintiff's negligent supervision claim is GRANTED.

**7.   Negligent Infliction of Emotional Distress Claim**

Plaintiff seeks damages for negligent infliction of emotional distress. She claims the City's arbitrary and capricious actions—including denial, delay, stonewalling, and allowing agents to execute municipal code without proper experience—caused her emotion distress. Kane claims medical expenses resulting from this distress. The City argues that Kane does not meet the necessary standard to establish a negligent infliction of emotional distress claim.

The tort of negligent infliction of emotional distress is a judicially-created, narrowly-tailored cause of action allowing recovery for family members who witness the injury or death of a loved one shortly after a physical accident. *Hegel v. McMahon*, 136 Wash.2d 122, 125–26 (1998); *Gain v. Carroll Mill Co.*, 114 Wash.2d 254, 261 (1990). The tort presumes a traumatic event, such as witnessing a "crushed body, the bleeding, the cries of pain, and, in some cases, dying words which are really a continuation of the event." *Colbert v. Moomba Sports*, 163 Wash.2d 43, 55 (2008). Injuries must be manifested by objective symptoms. *Id.* at 50.

Plaintiff offers no evidence to support this claim. There was no physical accident, no traumatic event. She has presented no evidence of a dead or injured loved one. Without such evidence, her claim fails. Defendant's Motion for Summary Judgment on Plaintiff's negligent infliction of emotional distress claim is GRANTED.

**8.   Promissory Estoppel Claim**

Plaintiff claims the City is liable on a theory of promissory estoppel for retroactively retracting her property rights. Kane argues that she relied upon City officials' representations and promises to develop her Property and in pursuing the RUE amendment process. She maintains that the City violated its promises by restricting her Property development and by denying several

of her proposed RUE amendments.  The City argues that Plaintiff is unable to offer specific evidence of representations on which she relied and argues that, even if she could cite a specific promise, there is no justifiable reliance.  The City also maintains that there is no evidence of a promise revoked or a change in position.

Promissory estoppel applies where a promise is made which the promisor should reasonably expect to induce action or forbearance on the part of the promissee.  *Greaves v. Med. Imaging Sys., Inc.*, 124 Wash.2d 389, 398 (1994).  The promise must induce such action or forbearance.  *Id*.  Promissory estoppel applies where injustice can be avoided only by enforcement of the promise.  *Id*.  Courts are slow to apply estoppel principles to government entities when acting in their official capacities.  *See, e.g.*, *State v. Charlton*, 71 Wash.2d 748 (1967) (evidence must present unmistakable justification for imposition of the doctrine when a municipality has acted in its governmental capacity); *see also Bennett v. Grays Harbor County*, 15 Wash.2d 331, 341 (1942) (estoppel must be clearly necessary to prevent an obvious injustice).  No person is entitled to rely on representations of law.  *Bennett*, 15 Wash.2d at 341 ("the public . . . cannot be estopped by unauthorized, illegal, or fraudulent acts or statements on the part of their officers and agents . . . .").

There is no evidence to support Kane's argument that promissory estoppel applies to the City's regulation of her non-conforming property developments.  There is no evidence of a promise that her non-conforming developments would be acceptable under the RUE.  Additionally, she presents no evidence that any city official promised that her proposed amendments would actually be accepted.  Even if such a promise were made, the government agent would not have been authorized to make it, and Kane would not have been entitled to rely on it as a representation of law.  There is no evidence here of a specific promise, let alone injustice requiring enforcement of one.  For these reasons, Defendant's Motion for Summary Judgment on Plaintiff's promissory estoppel claim is GRANTED.

**9.  Partial Taking Claim**

Plaintiff asserts a claim against the City for a temporary taking of her Property by land use regulation.  Kane argues that she was denied reasonable use of her Property from the time the City

threatened to pursue code enforcement for her non-conforming developments.  She argues that a temporary taking resulted in the need to sell before the Property was fully developed.  Defendant counters that the City's regulations were not so severe as to cause a taking.  Arguing that no total taking occurred, the City contends that the Kane Property was not devalued as a result of City action, but rather increased in value.  The City argues that a profitable use could be made of the parcel, and that Plaintiff's taking claim therefore fails.

This Court's threshold inquiry is whether or not the City's land use regulations denied Kane a "fundamental attribute of ownership." *Guimont v. Clarke*, 121 Wash.2d 586, 602 (1993). If Plaintiff fails to show a *per se* taking, the analysis shifts to determine whether the regulation is intended to safeguard the public interest, health, safety, environment, or fiscal integrity of an area, or whether the regulation seeks to provide a public benefit rather than prevent a public harm.  *Id.* at 603.  If the regulation seeks to safeguard a public interest or confer a public benefit, a court will then consider whether the regulation advances a legitimate state interest.  If so, the court will balance the state interest against the adverse economic impact on the property owner.  *Id.*  Here, the *Penn Central* factors must be considered: first, the economic impact on the property; second, the interference with investment-backed expectations; third, the character of the government action.  *Penn. Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978).  Under federal and state law, a land use regulation which affords an economic use—even after diminishing value—is not considered a taking.  *See, e.g.*, *Euclid*, 272 U.S. at 389–90; *see also Carlson v. City of Bellevue*, 73 Wash.2d 41 (1986).

There was no physical taking of the Kane Property.  The issue, then, is whether, the land use regulations themselves constitute an effective taking.  First, the City code did not deny Kane a fundamental attribute of ownership.  She retained the right to possess, to exclude, to dispose, and to make some pecuniary use of her Property.  That is evidenced by her development and lease of the Property.  Because no *per se* taking exists here, this analysis will proceed to the second level of inquiry, following *Guimont*.  The land use regulations at issue here are by their very nature designed to protect the environment.  They serve a legitimate state interest in ensuring the natural surroundings remain healthy and that important ecosystems are not destroyed.  The state's passage

of numerous environmental protection laws reinforces the notion that a legitimate state interest is at play.  Therefore, the question becomes whether the regulations meet the *Penn Central* standard.

When Kane purchased her Property it was completely encumbered by a wetland buffer, foreclosing any development.  The administrative decisions Kane challenges here are subsequent issues arising from an initial RUE.  Without that exception, Kane would have been prohibited from building on the Property.  However, the exception granted by the City allowed Kane to develop her parcel.  The ensuing conflict centered on whether or not property development had exceeded the bounds of the RUE.  Plaintiff wants to claim adverse economic impact not only by the regulations but also by the delay resulting from the dispute over her non-conforming uses.  That posture is inappropriate.  The land use regulations themselves imposed no great loss of property value.  If this protracted struggle led to an economic loss, it is an unfortunate result which nevertheless has no bearing on this Court's takings analysis.  Similarly, the environmental regulations' interference with investment-backed expectations is negligible.  Finally, the character of the City's action is in conformity with any government seeking to ensure its code is enforced or accommodated.  Given that the City permitted an exception to the prior use restrictions, and given that Kane had the opportunity to amend the RUE, the City's action cannot be deemed over-burdensome.

Even after the regulations were imposed and the dispute carried forward, Kane was able to rent her Property, then sell it.  Whether or not she took a loss does not alter the fact that she was able to make financial use of a parcel that would otherwise have been undevelopable.  Even where an owner faces an economic loss, it is not enough to sustain a taking claim.  Defendant's Motion for Summary Judgment on Plaintiff's taking claim is GRANTED.

**10. Attorneys' Fees**

The City seeks fees as the prevailing party on Plaintiff's § 64.40 claim.  Wash. Rev. Code § 64.40.020(2) provides that "the prevailing party in an action brought pursuant to this chapter *may be* entitled to reasonable costs and attorney's fees." (Emphasis added).

The statute provides no guidance as to when fees may be awarded and when they may not be.  Nor do any reported cases interpreting the statute provide any such guidance.  Perhaps recognizing that the statute could be read to allow fees (only) to a prevailing plaintiff, the City

cites *Callfas v. Dep't of Constr. & Land Use*, 129 Wash. App. 579 (2005) for the proposition that a prevailing defendant may be awarded fees. In *Callfas*, the Washington Court of Appeals awarded fees to the prevailing defendant, stating without analysis: "Because the City is the prevailing party in this action, we grant its request for attorney's fees pursuant to RCW 64.40.020(2)." *Id*. at 598.

While the Plaintiff's claims are dismissed and are without merit, the City does not argue and this Court does not find that they are frivolous. The Court appears to have unfettered discretion in the matter under the statute, but there is no compelling reason to award fees in this case. The court will not award fees under this statute.

## CONCLUSION

Defendant's Motion for Summary judgment on all of Plaintiff's claims [Dkt. #30] is GRANTED. Defendant's request for legal fees pursuant to Wash. Rev. Code § 64.40.020(2) is DENIED. The City's alternate Motion for Partial Summary Judgment [Dkt. #56] and the Parties' stipulated Motion to Continue the Trial Date [Dkt. #67] are DENIED as moot. The matter is terminated.

**IT IS SO ORDERED.**

Dated this 2nd day of December, 2011.


RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

ORDER - 18